IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBORAH L. JENNINGS,

     Plaintiff,

v.

ANNETT HOLDINGS, INC. d/b/a TMC
TRANSPORTATION, INC.,

     Defendant.

Case No. 4:16-CV-00821-SNLJ

## PLAINTIFF'S TRIAL BRIEF

I.  General Factual Background.

This case involves an accident which occurred in the northbound lanes of Interstate Highway 55 in Jefferson County, Missouri.  Allen Jennings and his wife, plaintiff Deborah Jennings, and their adult daughter, Heather Laszewski, were traveling from their home in Jackson, Missouri, to St. Louis.  The weather was well below freezing. The highway, depending on which witness is correct, was wet, freezing, icy or snowy.  In any event, the temperature was below freezing and the weather was such that the TMC Transportation, Inc. ("TMC") truck driver had his windshield wipers on.

For some reason, currently unknown, Allen Jennings hydroplaned, lost control of his 2007 Honda Ridgeline, slid off the road, struck the median and veered back upon the highway coming to rest in what is commonly referred to as lane 3.  At or about the same time of morning, David Pierce, a truck driver operating within the course and scope of his employment with TMC, was also traveling northwardly on Interstate 55 pulling an unloaded trailer.  The truck driver says he had been traveling 62 miles per hour but slowed to 55 miles per hour because of the inclement weather.  He also says he turned off his radio and all distractions so he could concentrate on his

driving because of the weather conditions.  He saw the Jennings vehicle hydroplane and slide out of control and come back on the highway and will testify he made an effort to stop; but, in his words to the investigating police officer at the accident scene stated, ". . . he was unable to stop due to the snowy road conditions." (Arnold Police Department Crash Report, page 5.)

Mr. Jennings is unsure what caused him to lose control.  At least one witness has speculated there was "black ice" on the highway.  There is no question but that he did lose control, go off the highway, come back on the highway and his vehicle was at rest when struck by the tractor trailer.

Plaintiff will produce expert witnesses who will state the truck driver, who only slowed down to 55 miles per hour from 62 miles per hour on the slick highway, however, should have reduced his speed by at least one-third or by one-half if it was actually snowing as the officer states he was told.  The truck driver agrees that the pavement was wet and that it was freezing; and, it is agreed by a defense expert that the weather was freezing at approximately 18 or 19 degrees Fahrenheit and the highway was wet.  Under those circumstances, the truck driver should have reduced his speed by one-third to approximately 40 miles per hour or less.  A highly qualified reconstruction expert, Thomas Green, will testify that had the truck driver been traveling at 40 miles per hour or less, he could have safely stopped his vehicle within sufficient distance to avoid colliding with the stopped Jennings vehicle on the highway.

A meteorologist expert, who has also testified in federal court, will testify that the weather conditions at the time of the accident were:   a temperature well below freezing at about 18 or 19 degrees, wind gusts at about 9 to 18 miles per hour and light snow falling at the time of the collision.

1597425 / 2979 / 140176

There will be evidence that the Louisiana Commercial Driver's License Manual, which TMC truck driver Pierce agreed that he studied to obtain his commercial driver's license approximately two years before this wreck, specifically provides:

> "Wet roads can double stopping distance. You must drive slower to be able to stop in the same distance as on a dry road. Reduce speed by about one-third . . . on a wet road."  (Louisiana Commercial Driver's License Manual, page 2-15.)

There will also be evidence that the Missouri Commercial Driver License Manual provides the identical warning.  Additionally, the TMC truck driver will agree that he was operating the tractor trailer truck with the "Jake Brake" in the on position.  The evidence will be that the manufacturer of Jake Brakes has a black letter warning in its operating manual that:

> "WARNING!  Do not use the Jacobs Engine Brake when bobtailing or pulling an empty trailer on wet or slippery pavement, especially when operating a single drive axle vehicle." (Jacobs Engine Brake Operator's Manual, page 10.)

Additionally, the Peterbilt Model 387 Operator's Manual provides:

> "WARNING! Using the engine brake (Jake Brake) when operating on surfaces with poor traction (such as wet or icy, slippery roads or gravel) could cause loss of control."  (Peterbilt Model 387 Operator's Manual, page 27.)

Don Hess, who has been a longtime director of a college truck driving school, author of a book about safe truck driving and frequent lecturer to truck driver organizations on safety, will testify that it was negligent of the TMC truck driver to not slow down to below 40 miles per hour under the conditions that existed on Interstate 55 at the time of this accident.  He will also say that he should not have had the Jake Brake in the on position as that affected his ability to stop, and lastly that he knew he was pulling an unloaded trailer which adversely affected the stopping distance of his tractor trailer; and, that alone should have caused him to greatly reduce his speed to below 40 miles per hour.  The truck driver in his deposition finally acknowledged he was

- 3 -

aware that pulling an empty trailer did adversely affect his stopping distance in inclement weather.

    II.  <u>Issue(s) To Be Decided and Not To Be Decided by Jury</u>.

    TMC driver Pierce was both using his Jake Brake and pulling an empty trailer in spite of manufacturer warnings that both actions were unsafe and adversely affected stopping distance. Plaintiff's evidence will also be that he was driving too fast for the weather conditions.  Thus, the issue in this case before the jury is going to be whether (1) the intentional decision by the TMC truck driver to operate his vehicle at 55 miles per hour with his Jake Brake on and pulling an unloaded trailer on the freezing wet pavement (and as described by him to the police officer "snowy" road conditions) during weather which required him to use his windshield wipers was negligent; and, (2) if that negligence caused <u>or contributed to cause</u> injury to plaintiff Deborah Jennings.

    Deborah Jennings is now the only plaintiff in this case; and, TMC is the only defendant in the case.  This Court previously granted summary judgment and dismissed Allen Jennings from this case because Deborah Jennings accepted payment and in good faith settled any claim against Mr. Jennings.  Additionally, in granting Allen Jennings' summary judgment motion, this Court accordingly found that any and all claims by TMC for contribution from Mr. Jennings as an alleged joint tortfeasor were discharged pursuant to Section 537.060 RSMo. and no longer exist.  It is anticipated that defendant TMC will attempt at trial to throw all of the blame and liability for causing this accident on Allen Jennings; however, as pointed out above, Deborah Jennings previously entered into a release and settlement agreement with Allen Jennings and his carrier, AMCO Insurance Company fully settling and releasing Allen and AMCO, his insurance carrier, for any damages she sustained out of the accident which occurred on January 17, 2014. Thus, only if a jury finds TMC not negligent do they escape liability.

- 4 -

Initially, a coverage dispute had developed regarding the amount of liability coverage that AMCO Insurance Company provided to Allen Jennings to over the claims of Deborah Jennings; and, this very Court ended up denying plaintiff Deborah Jennings' efforts to "stack liability coverages;" and, thus, AMCO ended up paying to Deborah Jennings the full and complete amount of the coverage determined by this Court to be in effect on Mr. Jennings, i.e., Twenty-Five Thousand Dollars ($25,000.00), the required coverage under the Missouri Financial Responsibility Law.  In other words, the issue in Deborah Jennings' claim against her husband's, Allen Jennings' carrier, was a coverage issue; and, that claim has been previously fully settled and resolved pursuant to a judgment by this Court, with a full and complete release of Allen Jennings.  The Court in granting summary judgment and dismissing him from this action agreed that Mr. Jennings is thus not subject to contribution or apportionment.  (See summary motion and Court's judgment.)

It is still anticipated that TMC may contend that either Allen Jennings is a sole tort feasor or, in the alternative and contrary to existing law, that he is a joint tort feasor along with TMC and that responsibility or fault needs to be allocated or apportioned between Allen Jennings and TMC.  Under current Missouri law, and as this Court has previously ruled, however, there can be no such allocation or apportionment.  The Court will, as required, make any adjustment following the jury's verdict.  This trial Court will make any appropriate adjustments, post-verdict, if the jury finds in favor of Deborah Jennings and give TMC a credit for the AMCO settlement payment.

### Argument

I. There Can Be No Apportionment or Allocation of  Fault.

Where appropriate, a defendant can certainly argue that the party solely responsible for the plaintiff's alleged harm is not before the jury.  Thus, TMC can argue that Mr. Jennings is 100

- 5 -

percent at fault.  *Will v. Gilliam*, 439 S.W.2d 498 (Mo. 1969); *Cook v. Cox*, 478 S.W.2d 678 (Mo. 1972). However, a "sole cause" instruction is expressly prohibited by the Missouri Approved Jury Instructions (7th ed.):

> "No instruction shall be given on behalf of the defendant which hypothesizes that the conduct of one other than defendant was the sole cause of the occurrence."  [MAI 1.03 (1965).]

The committee comments to MAI 1.03 note that the "sole cause" issue is only properly raised by the proximate cause element of the appropriate verdict director.

The "sole cause" or intervening cause approaches are not helpful, however, in the more common circumstance of concurrent causation, where the defendant before the jury arguably contributed to cause the plaintiff's alleged harm. In that circumstance, there is absolutely no avenue under Missouri law to obtain a comparative fault determination as to absent settling contributing tortfeasors.

A party that is not present at trial cannot be identified on the verdict form. "[F]ault is only to be apportioned among those at trial." *Kansas City Power & Light Co. v. Bibb & Associates, Inc.*, 197 S.W.3d 147, 159-60 (Mo. App. W.D. 2006); *see also Jensen v. ARA Servs., Inc.*, 736 S.W.2d 374 (Mo. banc 1987). The jury must reach a 100% determination of fault amongst the parties who are at trial. *Id.*

Thus, what about potential co-tortfeasors like Allen Jennings who settle, can fault be apportioned to him? No!  Section 537.060 RSMo. applies:

> "When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall

- 6 -

discharge the tortfeasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tortfeasor."

Thus, if the jury finds against TMC and awards damages to Deborah Jennings, the Court, post-verdict, must deduct from the total damages found to have been suffered by Deborah Jennings awarded the Twenty-Five Thousand Dollars ($25,000.00) paid to Deborah Jennings by Mr. Jennings' insurance carrier, AMCO; and, TMC is responsible for the remainder, if any, if found to have contributed to her injuries through TMC's truck driver's negligence.

"The proper method for calculation damages is first to deduct from the total damages the amount the plaintiff received from the settling defendant." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 60 (Mo. banc 2005).

As earlier indicated, a jury is not, however, permitted to make a finding as to the comparative fault of settling parties. The leading case is *Teeter v. Missouri Highway and Transportation Comm.*, 891 S.W.2d 817 (Mo. banc 1995). *Teeter* involved a wrongful death claim involving a car accident. Prior to trial, the driver (and mother of the decedent) settled the claim against her. At trial, the jury was allowed to find the fault of the non-party mother, and apportioned 90% of fault to her, with 10% to the Missouri Highway and Transportation Commission ("MHTC"). The Missouri Supreme Court overturned the judgment.

First, our Supreme Court held that, if MHTC wanted to obtain contribution from the mother, it should have sought to have the court disapprove of the earlier settlement. *Id.* at 820-21. The court then held that MHTC must be held liable for the full amount of the verdict because MHTC was the only defendant at trial and "[r]ules of joint and several liability do not apply to cases with one defendant. As the lone defendant, MHTC is solely liable." *Id.* at 821.

- 7 -

MHTC argued that the jury found it to be only 10% at fault, and therefore that it should only have to pay for 10% of the verdict. The court stated, and made clear, that principles of comparative fault are inapplicable in a trial with only one defendant. *Teeter*, 891 S.W.2d at 821.

Further pertinent to the court's holding was the fact that the settling tortfeasor had not only been dismissed, but had paid a settlement. The court held that "[a] settling defendant is dismissed from the action for all purposes, **including allocation of fault**. Section 537.060 RSMo. expresses the public policy of this state." *Id.* (emphasis added).

A more recent case, after the 2005 tort reform legislation, is *Millentree v. Tent Restaurant Operations, Inc.*, 618 F. Supp. 2d 1072 (W.D. Mo. 2009). In *Millentree*, defendant filed a motion to apportion fault to a defendant that settled and was voluntarily dismissed from the action. The remaining defendant argued that Section 537.067 RSMo. and its "51% provision" required the jury to determine the relative apportionment of fault between the remaining and settling defendants, and that "the most efficient means of allocating fault" to the absent defendant would be to permit the jury to find his percentage of fault without adding him as a party at trial.

The statute relied upon by the *Millentree* defendant, Section 537.067 RSMo., was also amended as part of the 2005 tort reform to provide that, in all tort actions (including medical malpractice actions), "if a defendant is found fifty-one percent or more [at] fault, then such defendant [will] be jointly and severally liable for . . . the judgment. . . . If a defendant is found to [be] less than fifty-one percent at fault, then the defendant [will] only be responsible for the percentage of the judgment for which that defendant is" found responsible. Accordingly, joint and several liability will only apply to any defendant found to be 51% or more at fault for plaintiff's damages. Moreover, each defendant (emphasis added) will only be liable for the percentage of punitive damages for which fault is attributed to that defendant. Section 537.067 RSMo.

- 8 -

If defendant would suggest that the "51%" rule in Tort Reform Statute 537.067 RSMo. has some application, the Court is again referred to the post tort reform *Millentree* case, *supra*. wherein discharged tortfeasor who had reached a settlement agreement in good faith with an injured party released from any and all liability to other tortfeasors for contribution and noncontractual indemnity prevented the tortfeasor defendant in the *Millentree* case from joining the settling tortfeasor even if it was just to have the jury apportion his fault for the purpose of determining liability under the Tort Reform statute. The "51% Rule" has no application under the facts of this litigation.

The defendant in *Millentree* argued that the post-*Teeter* tort reform amendments required an assessment of fault as to all potential tortfeasors, even those not present for reasons of settlement or otherwise. Defendant argued that it would not violate the principles of Section 537.060 to name the settling defendant solely for purposes of an assessment of fault.

Relying on *Teeter*, the *Millentree* court rejected the argument. <u>While a non-settling defendant may be entitled to deduct from the verdict settlement amounts paid by settling defendants, a non-settling defendant is not entitled to an apportionment of fault as against non-parties.  Allen Jennings is a non-party</u>.  He was dismissed as a party in this case by summary judgment; and, in fact settled all claims that Deborah Jennings would have against for the maximum amount of liability insurance he had as determined by this Court.

Courts that have address this issue of allocation of fault to non-parties post-2005 tort reform have ruled consistently that it is prohibited. *See, e.g., Kansas City Power & Light Co. v. Bibb & Associates, supra*.

See also *Capell v. Abbick*, 123 SW3d 193 (Mo App WD 2003).  In this case, the motorist's spouse brought a personal injury action against the driver of the other vehicle and a city alleging that the other driver was negligent and that the city had a negligently designed

- 9 -

roadway.  The city was protected by sovereign immunity; and, the other defendant driver tried to

avoid responsibility for the full amount of the verdict by arguing that the apportionment of fault

between the defendant driver and the city gave him that protection.  The Court ruled, however,

that a jury's apportionment of fault between the defendant driver and the city had no effect on

the right of the motorist's spouse to collect the full amount of the judgment from either of the

tortfeasors in a negligence action.  The Court said that the injured spouse was entitled to a full

recovery offset by whatever had been paid by the other joint tortfeasor.

       II.     Jury Instruction Issue – Verdict Director.

       Plaintiff anticipates submitting her cause of action against defendant in a verdict director

which submits the act of negligence that the truck driver "drove at an excessive speed."  MAI

17.03.  It is anticipated that possibly someone might suggest a slight amendment to that

description of an act of negligence by proposing that it should read "drove at an excessive speed

under the circumstances."  This issue has been addressed in the case of *Strickland v. Barker*, 436

SW2d 37 (MO 1969).  In that case, the Supreme Court determined that it would be err to deviate

from the wording of MAI 17.03 by the addition of the words "under the circumstances."  In other

words, the instruction requires that not only does the approved instruction require that defendant

"drove at an excessive speed" but that such act of driving must be found to have been negligent;

and, in addition, caused or contributed to cause the injury and damages to plaintiff.  Thus, based

on existing case law, it would be err to modify MAI 17.03 to add "under the circumstances."

       III.  Injuries.

       There will be no question, and likely no issue, about the seriousness of Deborah

Jennings' injuries.  She suffered a severe head and brain injury that resulted in numerous

surgeries, including plastic surgery, removal and the subsequent replacement of part of her skull

and resulting emotional, memory, anxiety issues and other resulting disabilities. Her medical

bills total in excess of Two Hundred Forty Thousand Dollars ($240,000.00).

Date: September 18, 2017

Respectfully submitted,

**/s/ Maurice B. Graham**
Maurice B. Graham            18029MO
GRAY, RITTER & GRAHAM, P.C.
Attorneys for Plaintiff
701 Market Street, Suite 800
St. Louis, MO  63101-1826
(314) 241-5620; fax: (314) 241-4140
mgraham@grgpc.com


John P. Heisserer
Co-Counsel for Plaintiff
160 S. Broadview, 4th Floor
P.O. Box 1568
Cape Girardeau, MO  63702-1568
(573) 334-6061; fax: (573) 334-6061
jheisserer@capelawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2017, the foregoing was filed electronically with

the Clerk of Court to be served by operation of the Court's electronic filing system upon the

parties.


**/s/ Maurice B. Graham**
Maurice B. Graham            18029MO
GRAY, RITTER & GRAHAM, P.C.
Attorneys for Plaintiff
701 Market Street, Suite 800
St. Louis, MO  63101-1826
(314) 241-5620; fax: (314) 241-4140
mgraham@grgpc.com

- 11 -

1597425 / 2979 / 140176